UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DONALD MERRILL CLUMM,

Petitioner,

v.   Case No: 6:17-cv-445-Orl-28GJK

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

Respondents.
_____/

## ORDER

Donald Merrill Clumm ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition," Doc. 1) pursuant to 28 U.S.C. § 2254, alleging seven claims for relief based on ineffective assistance of counsel at trial in violation of the Sixth Amendment to the United States Constitution. Petitioner also filed a supporting Memorandum of Law (Doc. 3). Respondents filed a Response to Petition ("Response," Doc. 13) and a Supplemental Response to Petitioner ("Supplemental Response," Doc. 21) in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts*. Petitioner filed a Reply (Doc. 27) to the Response and Supplemental Response. For the following reasons, the Court concludes that Petitioner is not entitled to relief on his claims.

I.   **PROCEDURAL BACKGROUND**

The state trial court sentenced Petitioner to 4 years of incarceration and 6 years of probation for the offense of aggravated battery in Seminole County, Florida on January 4, 2010. (Doc. 14-1 at 30; case number 2008CF005107A). Judge Marlene Alva presided over this proceeding. (*Id.* at 28). Petitioner was released to probation on January 23, 2012. (*Id.* at 41). On April 13, 2012, while on probation, Florida's Department of Corrections filed an affidavit of violation of probation alleging that Petitioner had violated the conditions of his probation in three ways, the most serious violation being committing the criminal offense of burglary of a conveyance. (*Id.* at 41-42).

Petitioner made his first appearance on the violation of probation on April 13, 2012. (*Id.* at 40). On May 14, 2012, the state filed an information charging Petitioner with a new substantive offense for the burglary of a conveyance (Count One). (*Id.* at 68). This new offense was assigned case number 12CF1095A. At Petitioner's violation of probation arraignment on May 29, 2012 before Judge Kenneth Lester, the violation was consolidated with case number 12CF1095A. (*Id.* at 44). The parties agreed to this consolidation.[1]

The case proceeded to trial before Judge Lester on August 29, 2012 and a jury found Petitioner guilty of a burglary of a conveyance. (*Id.* at 117). The trial court adjudicated Petitioner guilty of that offense (Doc. 14-3 at 324) and then found Petitioner

---

[1] At an August 27, 2012 hearing on Defendant's Motion in Limine, the Court stated: "Incidentally with everyone's permission and consent in Case Number 2008-5107 which is the violation of probation case, that will be tried at the same time as the regular case." (Doc. 14-4 at 11). In Petitioner's January 29, 2013 Brief to the Fifth District Court of Appeal, Petitioner stated: "The parties agreed that the jury trial on the burglary charge would also serve as the violation of probation hearing in the 2008 case." (*Id.* at 56).

in willful violation of his probation on the aggravated battery charge. (*Id.* at 325; Doc. 14-1 at 50). On October 10, 2012, the trial court sentenced Petitioner as a violent career criminal to a term of fifteen years imprisonment for the burglary of a conveyance offense. (Doc. 14-1 at 56, 125-28). The trial court also sentenced Petitioner to a term of fifteen years imprisonment for the violation, to be served consecutively to the sentence imposed for the burglary offense.[2] (Doc. 14-1 at 56-59; 14-4 at 116).

Petitioner filed an appeal of the October 10, 2012 order adjudicating Petitioner guilty and imposing the sentences for the burglary offense and the violation with Florida's Fifth District Court of Appeal. (Doc. 14-2 at 58). The Fifth District Court of Appeal affirmed *per curiam*. (Doc. 14-4 at 94).

Petitioner next filed a motion to correct sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), which the trial court granted only to the extent that the violent career criminal designation was stricken from the sentencing order as to the violation of probation. (Doc. 14-5 at 43-51). The Fifth District Court of Appeal affirmed *per curiam*. (*Id.* at 65).

---

[2] The original Minutes, Judgment and Sentence for both the burglary offense and the violation reflected that Petitioner was adjudicated a violent career criminal. This designation as to the violation was later stricken as Petitioner was not originally adjudicated as a violent career criminal in the violation of probation case. (Doc. 14-5 at 50-51).

Petitioner then filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which the trial court denied. (Doc. 14-4 at 97-119). Petitioner appealed the denial, and the Fifth District Court of Appeal affirmed *per curiam*. (Doc. 14-5 at 35).

Finally, Petitioner filed a second Rule 3.850 motion, which the trial court dismissed as an abuse of process. (*Id.* at 72-111). The Fifth District Court of Appeal affirmed *per curiam*. (*Id.* at 132).

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent

4

considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was described in *Williams*:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 413. Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[3] *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), *citing Williams*, 529 U.S. at 410.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner

---

[3] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

5

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The Supreme Court decision applicable to an ineffective-assistance claim is *Strickland v. Washington*, 466 U.S. 668 (1984). *See Premo v. Moore*, 562 U.S. 115, 121 (2011). To make a successful claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *See id.* at 687-88. To make such a showing, a defendant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *United States v. Freixas*, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (quotation omitted).

Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (quotation omitted). In light of the general principles and presumptions applicable to a claim of ineffective assistance of

counsel, the cases in which a habeas petitioner can prevail are "few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) *(en banc)*.

III. ANALYSIS

A. Claim One

Petitioner claims trial counsel was ineffective for failing to advise him "of the maximum prison exposure he faced if he refused the State's plea offer." (Doc. 1 at 5). According to Petitioner, he would have accepted the State's plea offer if he had known that the rejection thereof "exposed him to 30 years in prison." (*Id.* at 6). It does not appear that this claim was raised with the state courts and, thus, it is procedurally defaulted. However, Petitioner argues that this claim should be considered pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012).[4]

In this case, the trial court held a Pretrial Conference on August 16, 2012, which appeared to involve the burglary of a conveyance case (Case Number 2012-CF-1095) and the violation of probation case (Case Number 2008-CF-5107).[5] At the Pretrial Conference, the State informed the trial court that Petitioner qualified as a "violent career criminal"

---

[4] Under *Martinez*, a prisoner may establish cause for the default of a claim of ineffective assistance of trial counsel in two circumstances: (1) there is no appointed counsel for the initial-review collateral proceeding; or (2) post-conviction counsel was ineffective under the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). Further, the ineffectiveness-of-trial-counsel claim must be "substantial," which means that the prisoner must show that "the claim has some merit." *Martinez*, 566 U.S. at 14. Petitioner did not have counsel for his collateral proceedings.

[5] The transcript of the Pretrial Conference identified both cases. (Doc. 14-4 at 1).

7

and that it had made a plea offer of "seventy months prison." (Doc. 14-4 at 3-4). The State noted that there was a minimum mandatory sentence of ten years' imprisonment. (*Id.*). The State also filed in open court a Notice of Intention to Seek Sentencing As Violent Career Criminal ("Notice"), which was served on Petitioner.[6] (Doc. 14-1 at 76; Doc. 14-4 at 4). The Notice revealed a "Maximum Prison Exposure" of "15 Years Prison," and a minimum mandatory sentence of "10 Years Prison." (Doc. 14-1 at 76). There is no indication from the record that Petitioner was ever advised by the trial court or by his counsel that he could also receive a sentence of fifteen years' imprisonment for violating the terms of his probation, which would result in a total sentence of thirty years.

Respondents argue that "Petitioner was specifically informed that he was facing a VCC sentence with a minimum mandatory sentence of ten years. He was not facing a possible thirty years sentence and it does not appear he was ever told this." (Doc. 21 at 5). However, it is Petitioner's position that, by rejecting the plea offer, he was actually facing the possibility of a sentence of thirty years—fifteen years in the burglary of a conveyance case and fifteen years in the violation of probation case. According to Petitioner, his counsel never informed him of the possibility of a thirty-year sentence. (Doc. 1 at 6). Petitioner states that he would have accepted the offer of seventy months if he had been properly advised by counsel of the actual sentence he was facing. (*Id.*).

---

[6] Petitioner acknowledges in the Petition that he received a copy of the Notice at the August 16, 2012 hearing. (Doc. 1 at 6).

The Court concludes an evidentiary hearing is warranted on Claim One to determine whether Petitioner is entitled to relief under *Martinez*.

### B. Claim Two

Petitioner next claims that trial counsel was ineffective for failing to advise him that he was "eligible to be sentence[d] as a VCC during plea negotiations." (Doc. 1 at 8). This claim was raised in Petitioner's first Rule 3.850 motion, and it was denied.

This claim is refuted by the record. Petitioner acknowledges that on August 16, 2012 his counsel showed him "a copy of the 'notice to seek sentencing as a Violent Career Criminal.'" (*Id.*). Petitioner expressed to his counsel "I don't qualify for that." (*Id.*).[7] Petitioner concludes that "[h]ad he known that he could be sentenced as a VCC he would have accepted state's 70 month plea offer." (*Id.*). Petitioner was shown the Notice by counsel on the day the plea offer was discussed. Even if he thought he did not qualify as a violent career criminal, Petitioner knew the state was seeking that designation and thus was made aware that there was a possibility he could be sentenced as a violent career criminal.

Petitioner has failed to demonstrate that counsel acted deficiently with regard to this matter or that he sustained prejudice. He has failed to demonstrate that the state

---

[7] This conversation took place before the hearing on August 16, 2012. (Doc. 27 at 7).

9

court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, Claim Two is denied.

C. Claim Three

Petitioner states that trial counsel was ineffective for failing "to file a timely motion to suppress [his] *Miranda* statement." (Doc. 1 at 9). Petitioner claims that his statement was involuntary because he was promised leniency if he confessed. (*Id.*). This claim was raised in Petitioner's Rule 3.850 motion and was denied.

At trial, Gregory Luge of the Seminole County Sheriff's Office testified that Petitioner voluntarily accompanied him to the police station for an interview, but that Petitioner was not arrested until after the conclusion of the interview. (Doc. 14-3 at 239, 250). Prior to the interview, Deputy Luge advised Petitioner of his *Miranda*[8] rights and Petitioner signed the *Miranda* form waiving those rights. (*Id.* at 240-41). According to Deputy Luge, Petitioner freely and voluntarily waived his *Miranda* rights (*Id.* at 241), and there is no evidence to the contrary. The Court found this was not a custodial interrogation. (Doc. 14-4 at 117). The Court further concluded that "even if it was custodial, the deputy read the Defendant *Miranda* prior to asking questions and the Defendant waived his rights." (*Id.*).

---

[8] *Miranda v. Arizona*, 384 U.S. 436 (1966).

10

The interview was recorded and admitted into evidence. (Doc. 14-3 at 243). At no point in the recording did Deputy Luge make any promises of leniency. Deputy Luge asked Petitioner about the events of that evening, and Petitioner admitted entering the vehicle and "look[ing] in it," although he denied taking anything from the vehicle. (*Id.* at 245-46).

Petitioner has failed to demonstrate that there was any basis upon which to file a motion to suppress. There is no evidence that Deputy Luge made any promises of leniency, and Petitioner freely and voluntarily waived his *Miranda* rights. Petitioner has failed to demonstrate that counsel acted deficiently with regard to this matter or that he sustained prejudice. Petitioner has thus failed to demonstrate that the state court's decision rejecting this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, Claim Three is denied.

### D. Claim Four

Petitioner asserts that the judge who presided over his 2008 aggravated battery charge should have been the judge that presided over his violation of probation in that case. He thus maintains that his trial counsel was ineffective for failing to "object to the appointment of a successor judge." (Doc. 1 at 11). This claim was raised in both Petitioner's Rule 3.850 motion and his 3.800(a) motion. It was denied on the basis that Petitioner was "not entitled to have the original judge preside over subsequent revocation

proceedings." (Doc. 14-4 at 118; *see also, Id.* at 136, *citing Scott v. State*, 909 So. 2d 364 (Fla. 5th DCA 2005)). This court agrees.

Petitioner was not entitled to have the original judge preside over the revocation proceedings. Thus, counsel had no basis for objection. Petitioner has failed to demonstrate that counsel acted deficiently with regard to this matter or that he sustained prejudice. Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, Claim Four is denied.

### E. Claim Five

Petitioner's claim five is contradictory. Petitioner first asserts that "[d]efense counsel was ineffective in that he advised the Petitioner to not testify because his prior criminal record could be used against him." (Doc. 1 at 13). He then alleges that defense counsel told Petitioner not to testify without any explanation as to why. (*Id.*) Petitioner also states "[d]efense [counsel] failed to advise Petitioner that the nature of his prior offenses could not be used against him if he were to testify." (*Id.*). This claim was raised in Petitioner's Rule 3.850 motion.[9] The trial court denied Petitioner's claim finding that

---

[9] "Ground 5: Trial counsel was ineffective in that he failed to advise the Defendant that the nature of his prior offenses would not come in if the defendant were to testify. Counsel told Defendant that 'You don't want to testify.' Trial counsel allowed the Defendant to believe that the State could impeach him with the facts and nature of his prior convictions should he testify. Thus, allowing the State's version of events to go uncontradicted. Trial counsel told the Defendant that 'You don't want to testify' but

12

"the Defendant does not assert that counsel gave improper legal advice or even that counsel knew that the Defendant was under any misconception about the scope of permissible impeachment. Based upon counsel's legal advice, the Defendant made a voluntary, personal choice not to testify. . . There is no basis to find that this choice was involuntary." (Doc. 14-4 at 118).

The day jury selection for Petitioner's trial took place, the trial court discussed the decision to testify with Petitioner and his counsel:

> THE COURT: And you've discussed with Mr. Clumm if he wants to testify or not testify?
> MR. STERLING: We have had that discussion.
> THE COURT: You've had a chance to discuss that. Mr. Clumm, during the course of the trial I will give you a chance to tell me what your position is after we have had the State put on their side of the case and you can make up your mind again if you want to change it. If you want to testify, that's fine. Your testimony is considered by the same standards as any other witness. If you don't want to, that's fine. You always act in your best interest because the State's always acting in theirs.
>
> (Doc. 14-3 at 7-8).

At the preliminary charge conference, the trial court again discussed with Petitioner that it was his decision whether to testify:

> THE COURT: I'm going to ask Mr. Clumm again at that time if he wants to testify. Just like I told you the other day, Mr. Clumm, if you want to testify, that's fine. If you don't want to testify, that's your decision. Obviously make sure that you listen very carefully to your attorney. He's very experienced in these matters and his advice should be strongly considered, but in the end it's your life, your trial.

---

offered no reason why. Trial counsel's advise (sic) cause (sic) the Defendant's waiver of his right to testify to be involuntary." (Doc. 14-4 at 106).

> You do whatever you think is in your best interest, okay. Everything
> is okay?
> MR. CLUMM: Yes.

(Doc. 14-3 at 219-20).

Finally, after the State rested, the trial court conducted an inquiry of Petitioner as to his decision to testify.

> THE COURT: Okay. Just like your attorney said and we talked about this before, this is the part of the trial where if you want to testify this is your opportunity. If you want to, that's fine with me. If you don't want to, that's fine with me. You do what's in your best interest. The State's always acting in their best interest. You have had a chance, an opportunity, on a number of occasions to discuss this with your attorney. Just need to hear from you what you want to do, sir. Do you want to testify or not testify?
> MR. CLUMM: No, I don't want to testify.
> THE COURT: Okay. And that's your personal decision after listening to your attorney, sir?
> MR. CLUMM: Yes, sir.

(*Id.* at 254-55).

It is clear that, on several occasions, the trial court discussed the decision to testify with Petitioner and that Petitioner had discussed the matter with his counsel. Petitioner informed the trial court that is was his "personal decision" not to testify after discussing the matter with his counsel. (*Id.*).

Petitioner has failed to demonstrate that counsel acted deficiently with regard to this matter or that he sustained prejudice. As such, Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States. Applying the AEDPA's deferential standard, Claim Five is denied.

F.  **Claim Six**

Petitioner states that trial counsel "failed to move for a mistrial on two separate occasions when State witnesses violated the motion in limine." (Doc. 1 at 14). This claim was raised in Petitioner's Rule 3.850 motion, and it was denied because such a motion would not have been granted. (Doc. 14-4 at 119).

Petitioner was charged with a single count of burglary of a conveyance. Prior to trial, Defendant's Motion in Limine excluding testimony that Petitioner was trying to enter other cars was granted. (Doc. 14-3 at 168). During the trial, there were three statements made that violated the trial court's pretrial order. Petitioner's counsel objected and moved for a mistrial with regard to the first violation. (*Id.*). The trial court denied the request for a mistrial but provided the jury with a corrective instruction. (*Id.* at 168-70). Petitioner's counsel made an objection with regard to the second violation, and the trial court again provided the jury with a corrective instruction. (*Id.* at 185-86). Petitioner's counsel also made an objection with regard to the third violation in which the deputy mentioned receiving a call about someone "possibly trying to break in to [sic] a vehicle or vehicles." (*Id.* at 213-14). The trial court overruled the objection, but the deputy clarified that the incident related to a single vehicle. (*Id.* at 214).

Petitioner's counsel moved for a mistrial on the first violation and objected to the last two violations. The trial court denied the request for a mistrial, overruled the

15

objections, provided curative instructions to the jury, and ensured, as to the last violation, that the deputy clarified his statement. Petitioner's counsel's actions were not deficient with regard to this matter, and Petitioner has not demonstrated prejudice.

Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, Claim Six is denied.

### G. Claim Seven

Petitioner argues that the "cumulative effect" of counsel's errors deprived him of a fair trial. (Doc. 1 at 16). However, none of Petitioner's individual claims of error or prejudice has any merit, and therefore the Court has nothing to accumulate. The Eleventh Circuit Court of Appeals has made clear that when "[t]here [is] no error in any of the [trial] court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Moreover, the Court has considered the cumulative effect of Petitioner's ineffective assistance claims and concludes that he cannot demonstrate cumulative error sufficient to entitle him to habeas relief. Consequently, Claim Seven is denied.

Allegations not specifically addressed herein are without merit.

### IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Court will hold an evidentiary hearing on Claim One only as discussed above. The hearing is scheduled for November 15, 2019 at 9:30 a.m. in Courtroom 6B of the George C. Young United States Courthouse Annex, 401 W. Central Blvd., Orlando, Florida 32801.

2. United States Magistrate Judge Kelly is directed to appoint counsel on behalf of Petitioner pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings.

3. At least twenty-one days prior to the evidentiary hearing, Petitioner shall file a statement entitled "Pretrial Narrative Statement" consisting of the following:

   (a) A brief general statement of the case;

   (b) A narrative written statement of the facts that will be offered by oral or documentary evidence at the evidentiary hearing;

   (c) A list of all exhibits to be offered into evidence at the evidentiary hearing;

   (d) A list of the full names and addresses of places of employment for all the witnesses that Petitioner intends to call; and

   (e) A summary of the anticipated testimony of each witness named in subparagraph (d).

4. At least fourteen days prior to the evidentiary hearing, Respondents shall file a "Pretrial Narrative Statement" complying with paragraph 3(a)-(e) above.

5. Claims Two, Three, Four, Five, Six, and Seven are **DENIED** and **DISMISSED with prejudice.**

**DONE** and **ORDERED** in Orlando, Florida on August 27, 2019.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party
OrlP-2 8/27